**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHAD BENNER,** | : | **CIVIL NO. 1:16-CV-2045** |
| | : | |
| **Petitioner** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **SUPERINTENDENT SMITH,** *et al.,* | : | |
| | : | |
| **Respondents** | : | |

**<u>MEMORANDUM</u>**

Petitioner Chad Benner ("Benner") filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging a conviction and sentence imposed in the Court of Common Pleas of Luzerne County, Pennsylvania. (Doc. 1). For the reasons discussed below, the court will deny the petition.

**I.** **<u>Factual Background</u>**

The factual background of this case has been summarized by the state court as follows:

> In 2010, [Benner] was charged in connection with allegations of sexual assault made by C.H., the younger sister of [Benner]'s former girlfriend. The following factual background was developed at a jury trial held on April 13, 2011: C.H. testified that she first had contact with [Benner] when her sister had moved into an apartment with [Benner], which occurred in July 2002. C.H. began to visit the apartment and babysit her sister's son while her sister and [Benner] were at work. At that time, [Benner] was twenty-nine and C.H. was fourteen.
>
> C.H. testified that her relationship with [Benner] became increasingly more uncomfortable as time passed. She indicated that first, [Benner] would compliment her looks and tell her that he would like to kiss and touch her. Although C.H. indicated that she told [Benner] to stop and would not respond to his advances, [Benner] began to show her

physical affection like extended hugs and back rubs. C.H. recalled a time where [Benner] came up behind her, wrapped his arms around her waist, and kissed her neck. As time passed, [Benner]'s behavior progressed to include sexual advances, including touching C.H.'s breasts and thighs. C.H. would tell [Benner] to stop this behavior and tried to leave or move to another room. C.H. revealed she did not tell her sister as she was afraid her sister would be disgusted and ashamed of her.

C.H. remembered that she was fourteen years old the first time [Benner] forced her to have oral sex. She recalled that she was laying on the couch in her sister's apartment when [Benner] unexpectedly sat on her chest, pinned her down, and forced his penis into her mouth. C.H. panicked and struggled to get free, but was unable to get away before [Benner] ejaculated. She did not remember what month this assault occurred, but indicated there were additional times where [Benner] pressured her to give him oral sex or to allow him to perform oral sex on her. As time went on, C.H. stopped struggling when [Benner] would approach her to have sexual contact as he would tell her that she was pretty and seemed to show romantic feelings for her.

[Benner] continued the sexual assaults on occasions when he could be alone with C.H.; the sexual abuse only stopped when C.H.'s sister broke up with [Benner] for unrelated reasons in September 2004. Although the assaults began in 2002, C.H. refrained from telling anyone about the abuse for several years. In 2006, C.H. first shared the details of her sexual contact with her then boyfriend, who is now her husband. In 2008, C.H. revealed the abuse to her parents, who contacted authorities.

<u>Commonwealth v. Benner</u>, 147 A.3d 915, 917-18 (Pa. Super. 2016).

## II.  State Court Proceedings[1]

On April 14, 2011, a jury convicted Benner of involuntary deviate sexual intercourse ("IDSI") and three counts of indecent assault. (Doc. 10-1 at 52, Jury Trial Disposition Sheet).  On July 22, 2011, the trial court sentenced Benner to a mandatory minimum sentence of ten to twenty years' incarceration for the IDSI conviction pursuant to 42 Pa.C.S. § 9714, based on Benner's prior sodomy conviction. (Doc. 10-1 at 60, Sentencing Disposition Sheet).  The trial court also sentenced Benner to consecutive terms of one to two years' imprisonment for each of the indecent assault convictions, rendering an aggregate sentence of thirteen to twenty-six years' imprisonment.  (Id.)  On July 29, 2011, Benner filed a post-sentence motion. (Doc. 10-1 at 61-62, Post-Sentence Motion).  On August 2, 2011, the trial court denied the post-sentence motion.  (Doc. 10-1 at 63, Trial Court Order).

Benner pursued direct appeal proceedings.  See electronic docket sheet for Commonwealth v. Benner, Superior Court of Pennsylvania, No. 1447 MDA 2011, available at http://ujsportal.pacourts.us.  On September 13, 2012, the Pennsylvania Superior Court found that there was insufficient evidence to support one of the indecent assault convictions, and vacated Benner's sentence.  (Doc. 10-2 at 7-24, Commonwealth v. Benner, No. 1447 MDA 2011 (Pa. Super. Sept. 13, 2012).  Upon

---

[1] A federal habeas court may take judicial notice of state court records. Minney v. Winstead, 2013 WL 3279793, at *2 (W.D. Pa. June 27, 2013); see also Reynolds v. Ellingsworth, 843 F.2d 712, 714 n.1 (3d Cir. 1988).  Accordingly, in reviewing this petition, the court takes judicial notice of the publicly available dockets of criminal and collateral post-conviction proceedings in the Court of Common Pleas of Luzerne County, the Superior Court of Pennsylvania, and the Supreme Court of Pennsylvania.

remand, on September 12, 2013, the trial court resentenced Benner to an aggregate sentence of twelve to twenty-four years' imprisonment, with credit for time served. (Doc. 10-2 at 90, Resentencing Disposition Sheet).

On March 31, 2014, Benner filed a petition for post-conviction collateral relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 PA. CONS. STAT. §§ 9541-46. (Doc. 10-3 at 1-15, PCRA Petition). On November 5, 2014, a hearing was held regarding the claims in the PCRA petition. (Doc. 10-3 at 41-53, PCRA Hearing Transcript). On November 21, 2014, the Court of Common Pleas denied Benner's PCRA petition. (Doc. 10-3 at 55, Order denying PCRA Petition).

On December 22, 2014, counsel for Benner filed a notice of appeal to the Pennsylvania Superior Court. (Doc. 10-3 at 56, Notice of Appeal). On May 22, 2015, Benner filed an application for relief in the Superior Court, seeking to proceed *pro se*. On June 9, 2015, the Superior Court directed the PCRA court to hold a hearing pursuant to Commonwealth v. Grazier, 552 Pa. 9, 713 A.2d 81 (1998) to determine whether Benner's waiver of counsel was knowing, intelligent, and voluntary. See Commonwealth v. Benner, 147 A.3d at 919. On June 17, 2015, the PCRA court issued an opinion responding to Benner's counseled 1925(b) statement. (Doc. 10-3 at 72-79, PCRA Court Opinion and Order dated June 17, 2015). On June 22, 2015, the PCRA court held a Grazier hearing and ultimately granted Benner's request to proceed *pro se*. See Commonwealth v. Benner, 147 A.3d at 919. The PCRA court transmitted the certified record to the Superior Court.

On January 28, 2016, the Superior Court remanded the matter to the PCRA court to allow Benner the opportunity to file an amended statement of matters

4

complained of on appeal, and directed the PCRA court to file a supplemental opinion. Commonwealth v. Benner, 2016 WL 379841 (Pa. Super. 2016). On April 26, 2016, the PCRA issued a supplemental opinion. (Doc. 10-4 at 64-73, PCRA Court Opinion). Benner filed a *pro se* appeal to the Pennsylvania Superior Court. On August 31, 2016, the Superior Court affirmed the denial of PCRA relief. (Doc. 10-5 at 69-79, Commonwealth v. Benner, No. 40 MDA 2015 (Pa. Super.); Commonwealth v. Benner, 147 A.3d 915 (Pa. Super. 2016)).

## III.   Standards of Review

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). A habeas corpus petition pursuant to § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. Preiser v. Rodriguez, 411 U.S. 475, 498-99, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Estelle, 502 U.S. at 68.

### A.   Exhaustion

Habeas corpus relief cannot be granted unless all available state remedies have been exhausted, or there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the rights of the

5

applicant.  See 28 U.S.C. § 2254(b)(1).  The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions.  See Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000).

A state prisoner exhausts state remedies by giving the "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).  Respect for the state court system requires that the petitioner demonstrate that the claims in question have been "fairly presented to the state courts."  Castille v. Peoples, 489 U.S. 346, 351, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989).  To "fairly present" a claim, a petitioner must present its "factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted."  McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999); see also Nara v. Frank, 488 F.3d 187, 197-98 (3d Cir. 2007) (recognizing that a claim is fairly presented when a petitioner presents the same factual and legal basis for the claim to the state courts).  While the petitioner need not cite "book and verse" of the federal Constitution, Picard v. Connor, 404 U.S. 270, 278, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971), he must "give the State 'the opportunity to pass upon and correct' alleged violations of its prisoners' federal rights" before presenting those claims here, Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (quoting Picard, 404 U.S. at 275, 92 S.Ct. 509).

### B.    Merits Standard

Once a court has determined that the exhaustion requirement is met and, therefore, that review on the merits of the issues presented in a habeas petition is warranted, the scope of that review is set forth in 28 U.S.C. § 2254(d).  Section 2254(d) provides, in pertinent part, that an application for a writ of habeas corpus premised on a claim previously adjudicated on the merits in state court shall not be granted unless:

> (1) [the decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) [the decision] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  To establish that the decision was contrary to federal law "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." Matteo v. Superintendent, 171 F.3d 877, 888 (3d Cir. 1999).  Similarly, a federal court will only find a state court decision to be an unreasonable application of federal law if the decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent."  Id.

Further, under 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a state court's findings of fact are correct.  A petitioner may only rebut this presumption with clear and convincing evidence of the state court's error.  Miller-El v. Cockrell, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard

in § 2254(e)(1) applies to factual issues, whereas the unreasonable application

standard of § 2254(d)(2) applies to factual decisions); Matteo, 171 F.3d at 888;

Thomas v. Varner, 428 F.3d 492, 497-98 (3d Cir. 2005).  This presumption of

correctness applies to both explicit and implicit findings of fact.  Campbell v.

Vaughn, 209 F.3d 280, 286 (3d Cir. 2000).  Consequently, a habeas petitioner "must

clear a high hurdle before a federal court will set aside any of the state court's

factual findings."  Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

Like the "unreasonable application" prong of paragraph (1), a factual

determination should be adjudged "unreasonable" under paragraph (2) only if the

court finds that a rational jurist could not reach the same finding on the basis of the

evidence in the record.  28 U.S.C. § 2254(d)(2); Porter v. Horn, 276 F. Supp. 2d 278,

296 (E.D. Pa. 2003); see also Torres v. Prunty, 223 F.3d 1103, 1107-08 (9th Cir. 2000);

cf. Jackson v. Virginia, 443 U.S. 307, 316 (1979).  "This provision essentially requires

the district court to step into the shoes of an appellate tribunal, examining the

record below to ascertain whether sufficient evidence existed to support the

findings of fact material to the conviction."  Breighner v. Chesney, 301 F. Supp. 2d

354, 364 (M.D. Pa. 2004) (citing 28 U.S.C. § 2254(d)(2) and (f)[2]).  Mere disagreement

with an inferential leap or credibility judgment of the state court is insufficient to

permit relief.  Porter, 276 F. Supp. 2d at 296; see also Williams v. Taylor, 529 U.S.

---

[2] "If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination."  28 U.S.C. § 2254(f).

362, 408-09 (2000); <u>Hurtado v. Tucker</u>, 245 F.3d 7, 16 (1st Cir. 2001). Only when the finding lacks evidentiary support in the state court record or is plainly controverted by evidence therein should the federal habeas court overturn a state court's factual determination. <u>Porter</u>, 276 F. Supp. 2d at 296; <u>see</u> <u>also</u> <u>Williams</u>, 529 U.S. at 408-09.

## IV.    <u>Discussion</u>

In the habeas petition, Benner raises three claims in which he: (1) challenges the sufficiency of the evidence; (2) alleges that trial counsel was ineffective for failing to object to the Commonwealth's alleged violation of Pennsylvania Rule of Criminal Procedure 560; and, (3) alleges that trial counsel was ineffective for failing to properly cross-examine the victim's sister.

### A.    **Sufficiency of the Evidence Claim**

Benner challenges the sufficiency of the evidence underlying his conviction for indecent assault by forcible compulsion on the grounds that the victim's testimony was not reliable, and sufficient evidence was not presented to show that he used any force or threats during the assaults. On direct appeal, the Pennsylvania Superior Court denied Benner's challenge to the sufficiency of the evidence. (Doc. 10-2, pp. 10-17, <u>Commonwealth v. Benner</u>, No. 1447 MDA 2011 (Pa. Super. Sept. 13, 2012)). The Superior Court found as follows:

> Benner's first question challenges the legal sufficiency of the evidence. Brief for Appellant at 7. As a general matter, our standard of review of sufficiency claims requires that we evaluate the record "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." <u>Commonwealth v. Widmer</u>, 744 A.2d 745, 751 (Pa. 2000). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." <u>Commonwealth</u>

v. Brewer, 876 A.2d 1029, 1032 (Pa. Super. 2005). Nevertheless, "the Commonwealth need not establish guilt to a mathematical certainty." Id.; see also Commonwealth v. Aguado, 760 A.2d 1181, 1185 (Pa. Super. 2000) ("[T]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence."). Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. See Commonwealth v. DiStefano, 782 A.2d 574, 582 (Pa. Super. 2001).

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. See Brewer, 876 A.2d at 1032. Accordingly, "[t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence." Id. (quoting Commonwealth v. Murphy, 795 A.2d 1025, 1038-39 (Pa. Super. 2002)). Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld. See Brewer, 876 A.2d at 1032.

Upon review of Benner's brief, we observe that his challenge to the sufficiency of the evidence implicates primarily counts three and four of the Criminal Information. Those counts, both of which charge Indecent Assault, also allege specific conduct. . . . Count four, citing 18 Pa.C.S. § 3126(a)(2) (indecent contact by forcible compulsion) asserts Benner's contact with the victim's vaginal area. Consistent with the Information, the trial court instructed the jurors on the statutory definition of Indecent Assault and provided the jury with a verdict slip that designated not only the elements of the statute particular to respective counts, but also recited the specific conduct alleged. Consequently, the jury was required to consider the evidence and determine . . . for the purpose of count four, whether he had contact with her vaginal area by forcible compulsion. See Verdict Slip, 4/14/11, at 2. Benner contends that the record is devoid of testimony to establish either count. Brief for Appellant at 7 ("There is nowhere in the record any testimony that the Defendant touched her buttocks."), . . . ("[T]here is no testimony that specifically says that the defendant had contact in [the victim's vaginal area].").

. . .

Concerning count four, . . . , we find the evidence, in the form of the victim's testimony and necessary inferences to be drawn from it, sufficient to sustain Benner's conviction for contact with the victim's vaginal area.  The victim testified unequivocally concerning forcible oral sex:

> Q.   Can you describe for the jury what else would happen?
>
> A.   There were other times like [the first time].  There would be oral sex.
>
> Q.   With the same thing you described with him putting his penis in your mouth?
>
> A.   Yeah, or he would perform oral sex on me.

N.T., Jury Trial, 4/13/11, at 30.  Undoubtedly, the members of the jury comprehended the mechanics of oral sex performed by a man upon a woman and would have understood that such conduct comprehends his purposeful contact with the woman's vaginal area.  Although, Benner does not argue that the contact in question was not forcible, we find the witness's likening of these instances of oral sex to the first incident, in which Benner had forcibly compelled the victim to engage in oral sex on him, more than sufficient to allow the inference that the conduct had been forcible in those later instances as well.

Finally, in support of the sufficiency claim, Benner advances a broad challenge based on the overall quality of the victim's testimony, arguing that its lack of detail and specificity renders it so vague and contradictory as to undermine the Commonwealth's capacity to prove any of the charges.  In support of this claim, Benner cites our Supreme Court's decision in <u>Commonwealth v. Karkaria</u>, 625 A.2d 1167 (Pa. 1993), but fails, regrettably, to suggest specifically how the Court's reasoning there is transferable to the facts before us.  Upon review of <u>Karkaria</u>, we conclude that it is not.  In that case, the Court considered the testimony of a fourteen-year-old witness who averred that the defendant, her stepbrother, had engaged her in numerous non-consensual sex acts over a course of approximately five months.  However, with those circumstantial similarities, <u>Karkaria</u>'s commonality with this case ends.  We agree with Benner that the victim's testimony in this case was remote from the occurrences at issue by reason of the fact that the victim had hidden them in shame for a period of several years.  Nevertheless, the signal impossibility that marked the victim's testimony in <u>Karkaria</u> does not appear in this

case. Unlike here, where the victim characterized individual incidents and recalled general circumstances of time and place, the alleged victim in <u>Karkaria</u> either failed to remember any nuance, always characterizing every attack in the same way, or otherwise described incidents in a manner inconsistent with human experience. <u>See</u> <u>id.</u> at 1171 ("Since there was no direct evidence of sexual intercourse between those dates, the jury in order to convict, would have had to conclude, beyond a reasonable doubt, that the child had been forced to submit to sexual intercourse over 300 times, without ever feeling pain, without any physical evidence to support the contention that she was so victimized, and without any specific recollection by Sidney as to a date certain upon which even one of the several hundred assaults occurred. . . . The lack of evidence as to when the alleged assaults occurred is made even more striking by the fact that Sidney offered one scenario, and one scenario only, for each one of the 300 or more alleged incidents of sexual assault."). Additionally, others called to testify in <u>Karkaria</u> had observed no ill effects surrounding the purported attacks, <u>see</u> <u>id.</u>, whereas in this case, others observed and attested to the victim's conflicted responses concerning intimate contact, as well as her reluctance to discuss her situation with anyone. Moreover, regardless of any similarity this case *might* bear with <u>Karkaria</u>, we find nothing in the evidence in this case so inherently unreliable and contradictory, or at odds with human experience, as to render the evidence legally insufficient to sustain the verdict. Such challenges are, in any event, better directed to the weight of the evidence.

(Doc. 10-2, pp. 10-17, <u>Commonwealth v. Benner</u>, No. 1447 MDA 2011 (Pa. Super. Sept. 13, 2012) (footnotes omitted)).

In reviewing sufficiency-of-the-evidence claims, the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). This is a highly deferential standard and requires that reviewing courts ask whether the jury's verdict was "*merely rational.*" <u>United States v. Hodge</u>, 321 F.3d 429, 439 (3d Cir. 2003); <u>United States v. Caraballo-Rodriguez</u>, 726 F.3d 418, 431, 434 (3d Cir. 2013)

(en banc).  When a state court decision rejects a sufficiency of the evidence challenge, a federal court may only overturn the state court decision if it was "objectively unreasonable."  <u>Cavazos v. Smith</u>, 565 U.S. 1, 2 (2011); <u>Coleman v. Johnson</u>, 566 U.S. 650, 651 (2012).

The Superior Court first addressed whether force was used during the assaults and concluded that the victim's testimony was "more than sufficient" to allow the inference that the conduct in question was forcible.  (Doc. 10-2, p. 15, <u>Commonwealth v. Benner</u>, No. 1447 MDA 2011).  Thus, acknowledging the jury's comprehension of and finding of forcible compulsion, the Superior Court rejected Benner's sufficiency argument predicated upon whether the use of force was involved.  The Superior Court then addressed Benner's sufficiency argument based on the overall quality of the victim's testimony.  The Superior Court noted that the victim was able to characterize individual incidents and recall general circumstances of the time and place of the assaults.  The Superior Court found that there was simply no evidence so unreliable or contradictory "to render the evidence legally insufficient to sustain the verdict."  (Doc. 10-2, p. 17, <u>Commonwealth v. Benner</u>, No. 1447 MDA 2011).  In so finding, the Superior Court rejected Benner's sufficiency argument that was based on the quality of the victim's testimony.

Upon review, the court finds that the state court's rejection of Benner's sufficiency of the evidence claim was a reasonable determination of the facts in light of the evidence presented, and was neither contrary to, nor an unreasonable application of <u>Jackson</u>, *supra*.  Thus, habeas relief is not warranted on this claim.

**B.      Ineffective Assistance of Counsel Claims**

The Sixth Amendment right to counsel is the right to the effective assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  This right to effective assistance of counsel also extends to the first appeal.  Lewis v. Johnson, 359 F.3d 646, 656 (3d Cir. 2004).  In Strickland, the Supreme Court articulated a two-prong test in assessing whether a petitioner has been denied the effective assistance of counsel.  Strickland, 466 U.S. at 687-88.  A petitioner must demonstrate: (1) that his counsel's representation "fell below an objective standard of reasonableness" and (2) that such defective performance caused the petitioner prejudice.  See id.

In evaluating the first prong of the Strickland test, the court must be "highly deferential" toward counsel's conduct.  Id. at 689.  There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.  Id. ("It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.").  "Strickland and its progeny make clear that counsel's strategic choices will not be second-guessed by post-hoc determinations that a different trial strategy would have fared better." Rolan v. Vaughn, 445 F.3d 671, 681-82 (3d Cir. 2006) (citing Strickland, 446 U.S. at 689).  Notably, courts will not deem counsel ineffective for failing to raise a meritless argument.  Strickland, 466 U.S. at 691; United States v. Saunders, 165 F.3d 248, 253 (3d Cir. 1999).

To satisfy the prejudice prong, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. See Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. Moreover, the petitioner must show that he or she had a reasonable likelihood of prevailing on the motion at issue, and having prevailed on the motion, it was also reasonably likely that the result of the trial would have been different. See Thomas v. Varner, 428 F.3d 491, 502 (3d Cir. 2005).

To prevail on a claim for ineffective assistance of counsel, a petitioner must satisfy both prongs of the Strickland test. Carpenter v. Vaughn, 296 F.3d 138, 149 (3d Cir. 2002). The inquiry may begin with either the deficient performance or prejudice prong, and the court is not required to consider the second prong of the test if the petitioner is unable to satisfy the first one. Strickland, 466 U.S. at 697.

### 1. *Failure to Object to Alleged Violation of Pennsylvania Rule of Criminal Procedure 560*

Benner argues that trial counsel was ineffective for failing to object to an alleged violation of Pennsylvania Rule of Criminal Procedure 560, governing criminal informations. First, Benner asserts that counsel was ineffective for failing to argue that the Commonwealth did not allege specific dates of the offenses. Second, Benner argues that his due process rights were violated when trial counsel failed to raise a variance between the criminal information and the victim's testimony. Benner cites to Commonwealth v. Devlin, 460 Pa. 508, 333 A.2d 888 (1975), in support of these arguments.

On appeal from the denial of PCRA relief, the Pennsylvania Superior Court

rejected this claim as follows:

> [Benner's] first claim is that both direct appeal and PCRA counsel
> provided ineffective assistance in failing to argue that [Benner] was
> not properly informed of the charges lodged against him pursuant to
> Devlin.  Pointing to the criminal complaint in which the
> Commonwealth charged him with IDSI and Indecent Assault for acts
> committed between July 2002 through September 2004, [Benner]
> contends that counsel should have argued that dates of the offenses
> were not alleged with sufficient certainty.  We disagree as this claim
> has no arguable merit.
>
> In Devlin, our Supreme Court held that due process mandates that the
> prosecution must fix the date of the commission of the offense with
> reasonable certainty.  Devlin, 460 Pa. at 513, 333 A.2d at 890-91.  In that
> case, the prosecution charged the defendant with one count of IDSI for
> the sexual assault of an intellectually disabled individual that allegedly
> occurred at some point during a fourteen-month period.  The Supreme
> Court concluded that the defendant's right to due process was violated
> as the Commonwealth's broad timeframe in which the offense
> occurred substantially denied the defendant the opportunity to present
> an alibi defense and to attack the victim's credibility.
>
> Nevertheless, the Supreme Court acknowledged that it was not
> appropriate to fix a bright line rule but allowed for flexibility in this
> determination:
>
>> Here, as elsewhere, [t]he pattern of due process is picked
>> out in the facts and circumstances of each case.  Due
>> process is not reducible to a mathematical formula.
>> Therefore, we cannot enunciate the exact degree of
>> specificity in the proof of the date of a crime which will be
>> required or the amount of latitude which will be
>> acceptable.  Certainly the Commonwealth need not
>> always prove a single specific date of the crime.  Any
>> leeway permissible would vary with the nature of the
>> crime and the age and condition of the victim, balanced
>> against the rights of the accused.
>
> Id. at 515-16, 333 A.2d at 892 (footnote and citations omitted).

This case can be distinguished from Devlin as that case only involved one single instance of sexual assault, whereas in this case [Benner] was charged with an ongoing pattern of sexual abuse that spanned several months. [Benner] took advantage of C.H.'s age and exploited her insecurity to groom her for sexual contact by complimenting her appearance and showing physical affection through extended embraces and back rubs. [Benner] was able to escalate his behavior to fondle Complainant's breasts and force her to give him oral sex while he pinned her down so she could not escape. Through his manipulation, [Benner] subsequently pressured C.H. to engage oral sex with him on multiple occasions. "[T]he Commonwealth must be afforded broad latitude when attempting to fix the date of offenses which involve a continuous course of criminal conduct." Commonwealth v. Groff, 378 Pa.Super. 353, 548 A.2d 1237, 1242 (1988).

More recently, in Commonwealth v. G.D.M, Sr., 926 A.2d 984, 990 (Pa. Super. 2007), we reaffirmed that "the due process concerns of Devlin are satisfied where the victim . . . can at least fix the times when an ongoing course of molestation commenced and when it ceased." In the present case, C.H. was able to testify that [Benner] subjected her to an ongoing pattern of molestation that began when she was fourteen and ended when she was sixteen. C.H. clearly confirmed that [Benner] first began forcing her to have oral sex when she was fourteen years old. [Benner] continued to sexually assault C.H. until he no longer had access to her when C.H.'s sister ended her relationship with [Benner] in September 2004. Moreover, at trial, the Commonwealth presented evidence to narrow the timeframe during which [Benner's] course of sexual assault began. The prosecutor introduced the testimony of C.H.'s sister, who testified that she began living with [Benner] in July 2002. [Benner's] advances toward C.H. quickly escalated from hugs and back rubs to inappropriate touching and forcible oral sex when C.H. was still fourteen years old. C.H. clearly testified that she remembered her first sexual encounter with [Benner] occurred when she was fourteen. As C.H. turned fifteen on January 6, 2003, the Commonwealth clarified that [Benner] committed IDSI and indecent assault with fourteen-year-old C.H. within an approximate six-month period (July 2002 to early January 2003).

Accordingly, we conclude [Benner] was not deprived due process by the Commonwealth's inability to fix the time of the offenses that occurred in a continuous course of conduct with greater specificity. Counsel cannot be deemed ineffective in failing to pursue a meritless claim. Groff, 548 A.2d at 1243. Thus, we reject [Benner's] claim that he was denied effective assistance of counsel when his attorneys refused to raise a claim under Devlin.

Commonwealth v. Benner, 147 A.3d at 920-21.

The state court distinguished Benner's case from Devlin, finding that Benner was charged with an ongoing pattern of sexual abuse that spanned several months, as opposed to the single instance of sexual assault in Devlin. The state court also cited to Commonwealth v. G.D.M, Sr., 926 A.2d 984, 990 (Pa. Super. 2007), for the proposition that a defendant's due process rights are sufficiently protected when the Commonwealth can fix the time that the molestation began and ended. The state court found that the Commonwealth presented evidence that clearly confirmed when the sexual assaults began and ended. Accordingly, the state court concluded that the Commonwealth provided a reasonably certain time frame as to when the offenses were committed. The state court found the Benner was not deprived due process by the Commonwealth's inability to fix the time of the offenses that occurred in a continuous course of conduct with greater specificity, and counsel was not ineffective for failing to pursue a meritless claim. The state court's determination that trial counsel was not ineffective for failing to pursue a meritless is certainly not contrary to, or an unreasonable application of, Strickland.

With respect to the variance claim, Benner contends that the victim testified about one incident of sexual assault that occurred in South Carolina, but the criminal information did not charge him with this alleged offense. Benner raised this issue in his PCRA petition, but the state courts did not address this claim. (Doc.

10-3 at 2-7, PCRA Petition). Given that the state courts never addressed this claim, the court will review the claim *de novo*.

A variance claim is an assertion that "(1) there is a variance between the indictment and the proof presented at trial and (2) the variance prejudices a substantial right of the defendant." United States v. Kemp, 500 F.3d 257, 287 (3d Cir. 2007) (quotation omitted). "[A] variance violates the Constitution only if it is likely to have surprised or otherwise has prejudiced the defense." Real v. Shannon, 600 F.3d 302, 308 (3d Cir. 2010) (quotation omitted). "Where 'on or about' language is used [in the information], the government is not required to prove the exact dates, if a date reasonably near is established." Id. (quoting United States v. Nersesian, 824 F.2d 1294, 1323 (2d Cir. 1987) (finding that "where, as here, the government's evidence proves that an offense was committed within a month of the month specified in an 'on or about' indictment or information, the 'reasonably near' requirement is satisfied")).

Benner has not established how he was surprised or prejudiced by the alleged variance. The criminal information charged Benner with offenses committed between July 2002 and September 2004. The only testimony regarding an incident in South Carolina is the victim's statement that, during this approximate two-year time period, "it happened once when we were – when we were on vacation in South Carolina." (Doc. 10-1 at 14, N.T. 4/13/11, 32:2-3). Based on the evidence presented at trial, the state court concluded that the evidence clearly confirmed the timeframe when the sexual assaults began and ended. The state court's determination that the incidents occurred during the course of an

19

approximate two-year period, was not an unreasonable determination of the facts. The record thus reflects that Benner was sufficiently informed of the charges against him in order to prepare an effective defense.  <u>See</u> <u>Russell v. United States</u>, 369 U.S. 749, 763 (1962) (recognizing that the sufficiency of an indictment is measured by "whether the indictment contains the elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet") (internal quotations omitted); <u>see</u> <u>also</u> <u>Real</u>, 600 F.3d at 308 (finding variance not unconstitutional, in part, because the indictment contained language of "on or about" the specific date).  Furthermore, in light of the extensive evidence against Benner that supported his convictions, he has not shown that he was prejudiced by the brief testimony regarding the alleged assault in South Carolina. <u>Real</u>, 600 F.3d at 303.  As such, the court will deny habeas relief on this claim.

### 2.    *Failure to Present Evidence*

Benner next argues that trial counsel was ineffective for failing cross-examine the victim's sister with respect to letters she wrote to Benner, which he claims establish the victim's motive to fabricate the sexual assault charges.  At the PCRA hearing, trial counsel testified as follows:

> Q.    With regard to the Petitioner's second issue with motive, were you made aware of letters that his ex-girlfriend who was the sister of the victim had written him while he was incarcerated?
>
> A.    Yes, I think I read the letters, too.
>
> Q.    And did you discuss presenting that evidence in court during his trial?

A.     I believe I did.  Nothing in those letters really indicated that she
       was going to use – makeup a story about her sister blaming him.
       She just said that she'[d] mention them.  But most of her letters
       [were] about him staying away from their son, and she was
       making efforts to try and terminate his parental rights.

Q.     Were you aware[,] at the time[,] of the Defendant's prior
       convictions for sodomy in the military of a child, and the
       criminal attempt at unlawful contact with a child?

A.     Yes, I was.

Q.     Were you concerned that any type of discussion of these letters
       or admission of these letters for any reason could open the door
       for the Commonwealth to cross-examine any of the witnesses
       about why – any type of reason that she wouldn't want the
       Defendant to have contact with her child?

A.     I was concerned about that.

Q.     So would it be your strategy to do everything you can to prevent
       the jury from knowing what the Defendant's prior record was?

A.     Absolutely.  Given the nature of the case, if they hear about that,
       that it happened before.  If they could get into it through these
       letters for some reason.  I was really concerned about that.  I
       was really concerned about him even taking the stand.  I advised
       him against it.  I knew he gave a statement to the police where
       he denied it.  I figured we could get that in through the police
       officer when he testified, that the jury would hear that he denied
       it but without taking the risk on cross-examination with
       something coming out that would really be detrimental to him.

Q.     In those letters, did it ever indicate that he was going – that the
       writ[er] of those letters, Christina Holvey, was going to, in any
       way, make up false allegations against him?

A.     No.  I didn't see anything in there where she indicated that.
       That would be something that I would look for so when she took
       the stand I could cross-examine her about that, that you had a
       reason to try and get your sister involved in trying to terminate
       the parental rights, and she would use her as a weapon against
       him.  I was looking for something like that the whole time.

(Doc. 10-3 at 50-51, N.T. 11/5/14, at 34:13-37:15).  The PCRA court ultimately denied

the petition as to this issue.  (Doc. 10-3 at 75-78, PCRA Opinion dated June 17, 2015).

In affirming the PCRA court's denial of this claim, the Pennsylvania Superior Court

found as follows:

> [Benner's] second claim is that direct appeal and PCRA counsel were
> ineffective in failing to pursue [Benner's] claim that trial counsel
> should have thoroughly cross-examined C.H.'s sister with respect to
> letters she wrote to [Benner] while he was in jail.  [Benner] alleges that
> "information found in the content of these letters in question could
> have reasonably supported a defense allegation that [C.H.] was
> charging [Benner] with these offenses to help her sister obtain full
> custody of a child that [Benner] fathered with [C.H.'s sister]."
> [Benner's] Brief, at 27.
>
> At the PCRA hearing, [Benner's] trial counsel, Atty. Jonathan
> Donovan testified that he was aware of the letters and indicated to
> [Benner] that the correspondence did not show that C.H. was willing to
> fabricate false allegations of sexual assault to help her sister deprive
> [Benner] of custody of his child.  Atty. Donovan indicated that he was
> also concerned about introducing the letters into evidence, as the
> writings contained references to the fact that [Benner] was serving a
> term of incarceration for [] prior convictions of sodomy and unlawful
> contact with a child.  Fearing that this information would undermine
> [Benner's] defense, Atty. Donovan made a strategic decision not to
> cross-examine the witness as to the contents of the letter as to prevent
> her from testifying that she wished to keep her son away from
> [Benner] due to his prior convictions for improper sexual contact with
> a child.  As [Benner] failed to show that trial counsel lacked a
> reasonable basis for his strategy, his ineffectiveness claim must fail.

Commonwealth v. Benner, 147 A.3d at 921-22.

In evaluating whether counsel's performance was deficient, the court "must

defer to counsel's tactical decisions, avoid "the distorting effects of hindsight" and

give counsel the benefit of a strong presumption of reasonableness.  Strickland, 466

U.S. at 689.  Benner has not demonstrated that trial counsel's articulated strategy of

not introducing the letters, which counsel feared could undermine the defense,

could never be considered part of a sound strategy. The Superior Court found that trial counsel had a reasonable and rational basis for not using the letters that the victim's sister wrote to Benner on cross, particularly in light of the fact that this evidence could open the door to other harmful evidence, namely, that Benner was serving a term of incarceration for a prior conviction of sodomy and unlawful contact with a child. The court finds that the record relied upon by the state court supports a finding that trial counsel was not ineffective for failing to cross-examine the victim's sister with respect to letters she wrote to Benner. The state court's determination is clearly not an unreasonable application of <u>Strickland</u>. Thus, Benner is not entitled to habeas relief on this claim.

**V.**    <u>**Certificate of Appealability**</u>

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Miller-El</u>, 537 U.S. at 327. "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason

would find it debatable whether the district court was correct in its procedural ruling." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). Here, jurists of reason would not find the disposition of this case debatable. Accordingly, a COA will not issue.

## VI.  **<u>Conclusion</u>**

For the reasons set forth above, the court will deny the petition for writ of habeas corpus. A separate order shall issue.

/S/ C<small>HRISTOPHER</small> C. C<small>ONNER</small>
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:      May 6, 2019